**ESTATE OF Helen Gladys RUSSELL.**

**Christine R. LEAVITT**

v.

**Beverly Ann MINGO.**

Supreme Judicial Court of Maine.

Argued Jan. 9, 1987.

Decided Feb. 23, 1987.

Linscott, Badger & Slater, Michael L. Rair (orally), Willard H. Linscott, Bangor, for plaintiff.

Rush & Beaupain, Dean A. Beaupain (orally), Millinocket, for defendant.

Before McKUSICK, C.J., and NICHOLS, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

GLASSMAN, Justice.

Christine Leavitt, the residuary legatee under the will of Helen Gladys Russell, appeals from the judgment of the Penobscot County Probate Court ordering distribution of 1,527 shares in the Putnam High Yield Trust to Beverly Ann Mingo. Leavitt contends that 610 of the shares were acquired after the will was executed and properly are part of the residuary estate. Because the will was properly construed to devise all 1,527 shares to Mingo, we affirm the judgment of the Probate Court.

On December 3, 1984, Helen Russell executed her will leaving "my shares in the Putnam High Yield Trust" to her niece, Beverly Mingo. The will made other bequests to several people and left the residue of the estate to Russell's sister, Christine Leavitt. The parties stipulate that Russell owned 917 shares of Putnam stock at the time she executed the will and purchased an additional 610 shares on June 11, 1985. Helen Russell died on June 24, 1985.

After a hearing on Mingo's petition for construction of the will, the Probate Court found that "the intent of the testatrix is that all 1,527 shares of Putnam High Yield Trust go to the devisee, Beverly Ann Mingo." The court further concluded that "[t]he devise of 'my shares' in the Putnam High Yield Trust to Beverly Ann Mingo includes all the shares of such Trust owned by the decedent as of the date of death," and entered its judgment accordingly.

■ On appeal Leavitt maintains that in determining the shares to be distributed to Mingo the Probate Court erred by applying a judicial rule of construction rather than the provisions of 18–A M.R.S.A. § 2–607 (1981).[1] We disagree. The Probate Court appropriately interpreted the will in light of the fundamental principle that "[t]he inten-

---

1. The provisions of 18–A M.R.S.A. § 2–607 are not inconsistent with the holding of the Probate Court. Subsection (a)(1) of section 2–607 states that the specific devisee of certain securities is entitled to "as much of the devised securities as

is a part of the estate at the time of the testator's death." Subsections (a)(2) through (4) address the effect of stock splits, mergers, and reinvestment plans and are not applicable in this case.

tion of the testator as expressed in his will controls the legal effect of his dispositions." *Philoon v. Varney*, 514 A.2d 1203, 1205 (Me.1986); 18–A M.R.S.A. § 2–603 (1981). The Probate Court construed the will in accordance with its finding that Helen Russell intended to devise all her 1,527 shares in the Putnam High Yield Trust to Beverly Mingo. There was no need to employ any technical rules of construction. *See In re Estate of Thompson*, 414 A.2d 881, 887 (Me.1980); *First National Bank v. DeWolfe*, 134 Me. 487, 490, 188 A. 283, 285 (1936).

■ Leavitt also contends that the Probate Court erred in determining the intent of the testatrix. The findings of the Probate Court will be upheld unless clearly erroneous. *Estate of Cushman*, 501 A.2d 811, 813 (Me.1985). The evidence amply supports the finding that Russell intended to devise all of her Putnam shares to Mingo. Using identical language, Russell, by the terms of her will, devised stock in a number of companies to various individuals. No clause devised to any individual a specific number of shares.

The Probate Court correctly interpreted the will as devising to Mingo all shares in the Putnam High Yield Trust owned by Russell at her death.

The entry is:

Judgment affirmed.

All concurring.