MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:     2021 ME 44
Docket:       Cum-20-263
Argued:       June 3, 2021
Decided:      September 14, 2021

Panel:        MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

ROBERT L. CONNARY et al.

v.

RICHARD A. SHEA et al.

HUMPHREY, J.

[¶1]  In 2003, Patricia and William Shea established the Shea Family Living Trust with assets that included stock issued by a particular bank.  The Trust was to conclude upon the death of the survivor of them, and all of the bank stock in the Trust was to be distributed to Patricia's nieces and nephews. In 2006, William died and, coincidentally, the bank redeemed all of its stock. Twelve years later, Patricia died and the successor trustee distributed the remaining assets of the Trust, which no longer included the bank stock.

[¶2]  The plaintiffs, including Robert L. Connary, are the nieces and nephews of Patricia (collectively Connary).[1]  Connary appeals from a judgment

---

[1]  The other nieces and nephews are Susan E. Napolitano, Patricia A. Narducci, James C. Clark, Margaret A. Gillett, and Eric R. Clark.

of the Superior Court (Cumberland County, *Stewart, J.*) granting a partial summary judgment in favor of the defendants, Richard A. Shea and two of his family members (collectively Shea),[2] on Count 2 of Connary's second amended complaint seeking a declaratory judgment "interpret[ing] and/or reform[ing]" part of the Trust.[3] Connary challenges both the court's determination that the provision gifting the bank stock to Connary was a specific devise that had adeemed and the court's ruling for Shea on Connary's reformation claim. We affirm the judgment except as to reformation. That claim must be remanded to the trial court for further proceedings.

## I. BACKGROUND

[¶3] The following facts are drawn from the parties' supported statements of material facts, viewed in the light most favorable to Connary. *See Kurtz & Perry, P.A. v. Emerson,* 2010 ME 107, ¶ 15, 8 A.3d 677.

---

[2] The defendants—Richard A. Shea, Dennis G. Shea, and William P. Shea—are the children of William Shea.

[3] Connary's second amended complaint includes nine counts: (1) breach of fiduciary duty and the replacement of trustee Richard Shea, (2) declaratory judgment on the interpretation of the Trust and/or reformation of the Trust, (3) breach of fiduciary duty and money damages against trustee Shea, (4) injunctive relief avoiding disbursements, (5) return of any improper distributions, (6) another breach of fiduciary duty by trustee Shea in the conversion of trust assets, (7) trustee Shea's breach of the duty of impartiality, (8) trustee Shea's breach of the duty of loyalty, and (9) trustee Shea's breach of the duty to protect beneficiaries' interests. The parties stipulated to judgment in favor of Connary on all counts other than Count 2, dismissing all claims arising out of the interpretation of the Trust with prejudice and dismissing any claims not arising out of that interpretation *without* prejudice.

[¶4]  In July 2003, Patricia and William created the Trust and funded it, in part, with stocks in General Electric and in Siwooganock Bank (the Bank), a private bank that was based in New Hampshire.[4]  The Trust's plan of distribution provided that upon the death of the survivor of William and Patricia, the successor trustee was to "take charge of the assets then remaining in this trust [and] pay all of the legally enforceable debts of the survivor" and of the Trust.  After complying with those conditions, the trustee was to distribute all of the General Electric and Bank stock to Patricia's nieces and nephews, and the remaining "net proceeds of the trust" to William's children.

[¶5]  In 2006, William died.  That same year, the Bank stock was recalled and redeemed, and the Trust received approximately $460,000 for the stock.  Over the next twelve years, after taxes related to the redemption were paid, the net funds from the redemption were variously deposited in and moved among

---

[4]  The Trust was also funded with other assets, including the parties' residence in Scarborough, and it separately provided that if William died before Patricia, she could occupy, rent, or sell the residence.  If Patricia elected to sell it, she could invest the proceeds, including by reinvesting them in a "replacement residence," or distribute portions of the proceeds to William's children and to Patricia.

4

the Trust's investment accounts, commingled with other funds in the Trust, and used to purchase various securities.

[¶6] In 2018, Patricia died, and Richard Shea became the successor trustee.[5] Shea liquidated the General Electric stock and distributed those proceeds to Connary. Shea determined that the Bank stock was no longer in the Trust and, after consulting with the attorney who drafted the Trust, informed Connary that he could not distribute any funds to Connary in its place. Connary responded that he would contest the Trust.

[¶7] On October 1, 2019, Connary filed a second amended complaint[6] seeking in Count 2 that the court either (A) declare that the Trust clearly and unambiguously "provides that the Connary heirs are entitled to the '[p]roceeds' from the involuntary sale of" the Bank stock or, if the Trust is ambiguous, "conclude that [Patricia] intended to gift any proceeds" from the redemption of that stock to Connary, or (B) reform the Trust to "conform to [Patricia's]

---

[5] The Trust designated Patricia and William as the "primary trustees" and Richard Shea as the successor trustee upon the death of the survivor of Patricia and William.

[6] On February 7, 2019, Connary filed the initial complaint in this matter, and on February 19, 2019, he filed the first amended complaint.

intentions" that "[t]he proceeds are to be distributed in equal shares to [Connary]."[7]

[¶8]  On October 15, 2019, Connary filed a motion for partial summary judgment seeking a summary judgment only on Count 2 of the second amended complaint.  In Count 2, Connary sought a declaratory judgment that the Trust provided for a *general* devise of the Bank stock and that Connary was entitled to the proceeds from its 2006 redemption.  Connary's motion did not address Connary's alternative claim for reformation, which he also asserted in Count 2.  Shea opposed the motion and filed a cross-motion for partial summary judgment, arguing that Connary was not entitled to the proceeds because the Bank stock was a *specific* devise that had adeemed.

[¶9]  On March 31, 2020, the court entered a partial summary judgment for Shea on Count 2 of the complaint, concluding that the Trust makes "clear and plain" that the settlors intended a *specific* devise of the Bank stock, which adeemed in 2006 following its recall and redemption by the Bank, and it "denied and dismissed" the reformation claim.  Connary then filed a motion for

---

[7]  The Superior Court shares concurrent equitable jurisdiction with the probate courts and has jurisdiction over declaratory judgment actions seeking the construction of trust instruments. *See* 4 M.R.S. §§ 105, 252 (2021); 14 M.R.S. 5956 (2021).  Title 18-C M.R.S. 1-302(1)(C) (2021), which confers jurisdiction on the probate courts over "all subject matter relating to . . . [t]rusts," does not confer exclusive jurisdiction on the probate courts. *See also* 18-C M.R.S. § 1-201(8) (2021).

6

reconsideration of the court's partial summary judgment order and a motion to strike the ruling on the reformation claim. Connary argued that the court erred in denying and dismissing the reformation claim because it was not subject to the motions for summary judgment. The court denied both motions and stated that it had entered a summary judgment on Count 2 based on its finding of the clear and plain intent of the settlors.

[¶10] On September 22, 2020, the parties stipulated to a final judgment in favor of Shea on all remaining counts of the second amended complaint. Connary timely appealed. *See* 14 M.R.S. § 1851 (2021); M.R. App. P. 2A, 2B(c)(1).

## II. DISCUSSION

[¶11] We review the entry of a summary judgment de novo, "considering the evidence in the light most favorable to the nonprevailing party to determine whether the parties' statements of material facts and the record evidence to which the statements refer demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Kurtz & Perry, P.A.,* 2010 ME 107, ¶ 15, 8 A.3d 677 (quotation marks omitted). "A material fact is one that can affect the outcome of the case, and there is a 'genuine issue' when there is sufficient evidence for a fact-finder to choose

between competing versions of the fact." *Stewart-Dore v. Webber Hosp. Ass'n*, 2011 ME 26, ¶ 8, 13 A.3d 773.

[¶12] The parties agree that the disposition of the Bank stock is governed by the terms of the Trust, but they dispute whether the evidence, viewed in the light most favorable to Connary, demonstrates that it was a *specific* or a *general* devise, that the stock was adeemed by the 2006 redemption, and that the Trust should be reformed to reflect William's and Patricia's intent, all of which is reviewed de novo. *See Kurtz & Perry, P.A.*, 2010 ME 107, ¶ 15, 8 A.3d 677.

## A.    General or Specific Devise

[¶13] "Courts are averse to construing [devises] as specific" and will do so only when the intent of the settlor to make them specific "is clear and plain." *Maxim v. Maxim*, 129 Me. 349, 354, 152 A. 268 (1930); *see also* 18-B M.R.S. § 112 (2021). The intent of the settlor, as determined by unambiguous language in the trust, is a question of law that we review de novo. *In re Pike Fam. Trs.*, 2012 ME 8, ¶ 7, 38 A.3d 329. "The cardinal rule is to give effect to the intention of the [settlor] gathered from the language of the [trust], bearing in mind that such intention must be related to the time the [trust] was executed." *Me. Nat'l Bank v. Petrlik*, 283 A.2d 660, 664 (Me. 1971); *see* 18-B M.R.S. § 112. The settlor's intent is gathered from the whole instrument, and a court must

8

interpret it "within the four corners of the document but may use the context of the entire [instrument] to interpret specific sections." *Fiduciary Tr. Co. v. Wheeler*, 2016 ME 26, ¶ 9, 132 A.3d 1178 (quotation marks omitted); *see* 18-B M.R.S. § 112.

[¶14] Prior to engaging in that review, we note that although the Maine Uniform Trust Code, 18-B M.R.S. §§ 101-1104 (2021), applies to the Trust, "[t]he rules of construction that apply in [Maine] to the interpretation of and disposition of property by will also apply as appropriate to the interpretation of the terms of a trust and the disposition of the trust property." 18-B M.R.S. § 112; *see, e.g., Fiduciary Tr. Co.*, 2016 ME 26, ¶ 9, 132 A.3d 1178 (applying the rules of interpretation for wills to the terms of a trust).[8]

[¶15] A devise like "[a] legacy is general when it is so given as not to amount to a bequest of a particular thing or money of the testator, as distinguished from all others of the same kind." *Spinney v. Eaton*, 111 Me. 1, 5, 87 A. 378 (1913) (quotation marks omitted); *see, e.g., Perry v. Leslie*, 124 Me. 93, 94, 126 A. 340 (1924) (concluding that a bequest of "twenty shares in the capital stock of [a corporation]" was a general legacy because the total shares

---

[8] We highlight this point because so much of our relevant jurisprudence in this area relates to the rules of construction regarding the interpretation of and disposition of property by will.

held by the testator at her death exceeded the shares disposed of and there was no language "directly identifying the shares bequeathed" (quotation marks omitted)).

[¶16] Conversely, a specific devise is like "a bequest of a specific thing or fund that can be separated out of all the rest of the [settlor]'s estate of the same kind, so as to individualize it, and enable it to be delivered to the legatee as the particular thing or fund bequeathed." *Maxim*, 129 Me. at 353, 152 A. 268 (quotation marks omitted); *see, e.g.*, *Gorham v. Chadwick*, 135 Me. 479, 483, 200 A. 500 (1938) (concluding that a bequest of "my stock in [a corporation]" was specific because the testator "identifie[d] that particular stock as then belonging to her and distinguishe[d] it from all other parts of her property of like kind" (quotation marks omitted)).[9]

[¶17] A specific devise is often accompanied by a personal pronoun indicating the testator's personal ownership of the property. *See* Restatement

---

[9] Connary takes issue with the trial court's comparison to *Gorham v. Chadwick*, 135 Me. 479, 200 A. 500, and argues that *Perry v. Leslie*, 124 Me. 93, 126 A. 340 (1924), is more analogous. However, unlike in *Perry*, where the total number of shares of stock of a particular company held by the estate exceeded the total number disposed of by the testatrix's will, 124 Me. at 94, 126 A. 340, the Trust disposed of "all" of the Bank stock rather than just a portion of the total pool. Furthermore, in *Gorham* the relevant inquiry was whether the stated bequest "can be separated out of all the rest of the testator's estate of the same kind, so as to individualize it." *Maxim v. Maxim*, 129 Me. 349, 353, 152 A. 268 (1930) (quotation marks omitted); *see Gorham*, 135 Me. at 483, 200 A. 500. We find no error in the court's comparison to *Gorham*.

(Third) of Property: Wills and Donative Transfers § 5.1 cmt. b (Am. L. Inst. 1999); I Benoit et al., *A Practical Guide to Estate Planning in Maine* § 3.1.4(g) at 3-14 (Hunt 2d ed., 2021) (suggesting that "[t]o avoid any ambiguity as to whether the devise is specific or general," a specific devise should use personal pronouns such as "'my' automobile" or, in the case of a bequest, "the AT&T stock 'owned by me at the date of my death'"); *see, e.g.*, *Gorham*, 135 Me. at 483, 200 A. 500 (reasoning that the testator's "use of the possessive 'my' is convincing indication that [the testator] intended to make her gift specific").

[¶18]   Here, the Trust devised "all" of the Bank stock to Connary. Although not a personal pronoun, "all" clearly refers to the finite pool of Bank stock held by the Trust.  It is distinguishable from, *see Gorham*, 135 Me. at 483, 200 A. 500, and can be separated out of, *see Maxim*, 129 Me. at 353, 152 A. 268, the rest of the Trust's assets, such that the language disposes of the entire pool of Bank stock, as opposed to a portion of those holdings, *cf., Perry,* 124 Me. at 94, 126 A. 340.  We agree with the court that the language of the Trust reflects a "plain and clear" intent by William and Patricia to create a specific gift of the Bank stock in favor of Connary.[10]

---

[10]  In arguing that the Trust's Plan of Distribution in Article Two makes it "clear that the [settlors] intended their successor Trustee to deliver the value of the stocks and not the very thing bequeathed," Connary misconstrues the Trust's use of the term "proceeds" in subsection A.3. and the authority given to the successor trustee in subsection A.2. to "take charge of the assets then

## B.     Ademption

[¶19]  "The distinctive characteristic of a specific legacy is its liability to ademption.  If the specific thing or particular fund bequeathed is not in existence or has been disposed of by the testator subsequent to the making of the will, the legacy is extinguished or adeemed."  *Gorham*, 135 Me. at 484, 200 A. 500.  As noted above, although Title 18-B provides rules for the creation and administration of trusts, *see* 18-B M.R.S. §§ 102, 1104(1)(A), to determine whether the specific devise of the Bank stock was adeemed in 2006, we are guided by the principle that "[t]he rules of construction that apply in [Maine] to the interpretation of and disposition of property by will also apply as

---

remaining" and pay all of the "legally enforceable debts" of the surviving settlor and the Trust.  Contrary to Connary's assertions, those provisions did not require the successor trustee to liquidate all of the Trust's assets, including all shares of stock, in order to pay the debts of Patricia and the Trust before delivering proceeds representing the value of the Bank stock to Connary.  Because the Bank stock did not exist in the Trust at the time of Patricia's death, "proceeds" cannot include sums that resulted from multiple reinvestments, commingling, and withdrawals of the net funds from the 2006 stock redemption.

Moreover, we are not persuaded by Connary's argument that treating the Bank stock as a specific devise conflicts with the "manifest object" of William and Patricia to benefit their respective bloodlines.  Rather, the devise of a specific gift of the stock to Connary is consistent with that objective.

12

appropriate to the interpretation of the terms of a trust and the disposition of the trust property," 18-B M.R.S. § 112.

[¶20] Currently, those rules of construction are found in the Maine Probate Code codified in Title 18-C, which became effective on September 1, 2019. *See* 18-C M.R.S. § 8-301(1) (2021). However, when the Trust was created (2003), when Patricia died (2018), and when Connary's first complaint was filed (February 2019), the predecessor Probate Code—Title 18-A—was in effect. *See* 18-A M.R.S. § 8-401(a) (2018). Shea argues that the relevant ademption statute is 18-A M.R.S. § 2-607 (2018), whereas Connary argues that the ademption provision of the current statute, 18-C M.R.S. § 2-606(1)(F) (2021), applies.[11]

[¶21] The difference is important because the current code, Title 18-C, disfavors the ademption of a specific devise in certain circumstances. In particular, paragraphs E and F of 18-C M.R.S. § 2-606(1) reflect the "intent" theory of ademption in which "the testator's intent is central to the inquiry" and "the devise fails *unless the evidence establishes that failure would be inconsistent with the testator's intent.*" Restatement (Third) of Property: Wills and Donative

---

[11] *See* P.L. 2017, ch. 402, § A-2 (effective Sept. 1, 2019, as provided by P.L. 2019, ch. 417, § A-102) (codified at 18-C M.R.S. § 2-606 (2021)).

Transfers § 5.2 cmt. b (Am. L. Inst. 1999) (emphasis added); *see* 18-C M.R.S.A. § 2-606 Me. cmt. (2020). In contrast, Title 18-A does not include language similar to paragraphs E and F; rather, 18-A M.R.S. § 2-607 reflects the "identity" theory of ademption in which "a specific devise completely fails—i.e., the devisee is entitled to nothing—if the specifically devised property is not in the testator's estate at death." Restatement (Third) of Property: Wills and Donative Transfers § 5.2 cmt. b (Am. L. Inst. 1999).

### 1. The Relevant Rules of Construction

[¶22] Title 18-A and Title 18-C both include identically worded rules of construction or presumption regarding the applicability of the Code to trusts executed before the Code's effective date—January 1, 1981, for Title 18-A and September 1, 2019, for Title 18-C—as follows:

> Any rule of construction or presumption provided in this Code applies to instruments executed . . . before [this Code's effective date] unless there is a clear indication of a contrary intent.

18-A M.R.S. § 8-401(b)(5); *see* 18-C M.R.S. § 8-301(2)(E). Based on this language, Connary argues that, even though Title 18-A was in effect when the Trust was created, the nonademption provisions of 18-C M.R.S. § 2-606(1)(F) apply retroactively to the construction of the Trust at issue here. *See* 18-C M.R.S. § 2-601 (2021); *see also* 18-B M.R.S. § 112.

14

[¶23]   However, in *Scribner v. Berry*, we interpreted 18-A M.R.S. § 8-401(b)(5) and held that this provision applies to instruments "executed before [Title 18-A]'s effective date *only when the testator survives the effective date*." 489 A.2d 8, 9 (Me. 1985) (emphasis added).[12]  We reasoned that "had the Legislature intended that [Title 18-A's] rules of construction apply even when the testator dies before [Title 18-A]'s effective date," it would have expressly stated so as it had in another statutory provision.  *Scribner*, 489 A.2d at 9*; see* 18-A M.R.S. § 8-401(b)(2) ("[Title 18-A] applies to any proceedings in Court then pending or thereafter commenced *regardless of the time of the death of decedent . . . .*" (emphasis added)).  More importantly, we stated that applying the current rules of construction to a will that predates the effective date of those rules "is justified only when the testator has the opportunity to modify his will if he or she disagrees with the code."  *Scribner*, 489 A.2d at 9; *see also Est. of Calden*, 1998 ME 140, ¶ 6, 712 A.2d 522 (reasoning that because the

---

[12]  In that case, the issue was whether the adopted children of the testator's son were included in the terms "descendants" or "issue" as used in the testator's will.  *Scribner v. Berry*, 489 A.2d 8, 8 (Me. 1985).  At the time of the will's making and throughout the testator's lifetime, the applicable rule of construction excluded the adopted children from those two terms, but after the testator's death and at the time of the petition for construction of the will, the Probate Code had been amended, and the new rule of construction expressly provided that adopted children were included within those terms.  *Id.* at 8-9; *see* P.L. 1979, ch. 540, § 1 (effective Jan. 1, 1981) (codified at 18-A M.R.S.A. § 2-611 (Supp. 1980)).

testator died *after* the effective date of the new Probate Code, the new Code's rules of construction applied to the testator's will).

[¶24] The same considerations that guided us in *Scribner* persuade us that 18-C M.R.S. § 8-301(2)(E) does not apply in the circumstances of this case. Patricia died in November 2018, seven months prior to the effective date of Title 18-C, and thus she did not have an opportunity to amend the terms of the Trust in response to the provisions of Title 18-C.[13] Accordingly, we conclude that the rules of construction regarding the nonademption of a specific devise in 18-C M.R.S. § 2-606 do not apply, and, instead, 18-A M.R.S. § 2-607 governs the ademption of the Bank stock at issue here.

### 2. Application of 18-A M.R.S. § 2-607

[¶25] Section 2-607(a)(1) states that "[i]f the will provides for a specific devise of certain securities rather than the equivalent value thereof, the specific devisee is entitled only to . . . [a]s much of the devised securities as is a part of the estate at the time of the testator's death." Paragraphs 2 through 4 of section

---

[13] The Trust itself might also have constrained Patricia's power to revoke or amend the provision regarding distribution of the Bank stock. As the survivor, she was authorized to *revoke* the Trust in whole or in part "except as to the provisions of Article Two"—the article that contained the distribution provision at issue here—and she could *amend* the trust in writing "except as may be limited by Article . . . Two of this Declaration of Trust." Even assuming that Patricia retained the ability to amend or revoke the distribution provision, however, her death before the effective date of Title 18-C persuades us that Title 18-C cannot be applied. *See Scribner*, 489 A.2d at 9.

2-607(a) allow the specific devisee—in certain circumstances—to receive different securities in lieu of what was specified in the instrument. However, none of those circumstances exists here because in 2006, Patricia received cash in exchange for her stock, and paragraph 2 applies only to stock splits, while paragraph 3 relates to mergers and paragraph 4 applies to reinvestment plans. *See* 18-A M.R.S. § 2-607(a)(2)-(4); *Est. of Russell*, 521 A.2d 677, 677 n.1 (Me. 1987). That leaves paragraph 1, which, as noted above, entitles the devisee to the specific shares if they remain in the estate at the time of the settlor's death. *See* 18-A M.R.S. § 2-607(a)(1). Because no shares[14] of the Bank stock remained in the Trust at the time of Patricia's death, the trial court correctly concluded that the Bank stock had adeemed.

## C. Reformation

[¶26] Finally, Connary argues that the court erred when it *sua sponte* ruled on his alternate reformation claim[15] after concluding that the Trust

---

[14] In support of his argument that the Bank stock did not adeem, Connary contends that the proceeds of the 2006 stock redemption are still held in the Trust and can be accurately traced. Although the parties dispute whether it was Patricia or her financial advisor who moved the 2006 redemption proceeds between various investment accounts and used the money to purchase other securities, they agree that the proceeds were commingled and not neatly segregated into a single account.

[15] That claim asked the court, pursuant to 18-B M.R.S. § 415 (2021), to reform the Trust provision dealing with the Bank stock to provide that "[t]he *proceeds* are to be distributed in equal shares to [Connary]" in order "to conform to [Patricia]'s intentions that her natural heirs recover the proceeds from [Patricia]'s inherited property."

language unambiguously provided for a specific devise of the Bank stock. Connary pleaded his reformation claim in part C of Count 2 of the second amended complaint as an alternative to his requests in part A and B for a declaratory judgment that either (A) "the Trust is clear and unambiguous and provides that the Connary heirs are entitled to the 'Proceeds' from the involuntary sale of [the Bank stock]" or (B) the Trust is ambiguous and must be construed to grant the proceeds of the sale to Connary. In his motion for partial summary judgment on Count 2 of the complaint, Connary requested a "declaratory judgment that the provisions of [the Trust] unambiguously provide for a general devise of the [Bank stock]." Connary did not argue for summary judgment on the reformation claim asserted in part C of Count 2, nor did he present evidence through his statement of material facts that, if believed, would demonstrate a "mistake of fact or law" necessitating reformation. 18-B M.R.S. § 415 (2021) ("The court may reform the terms of a trust, *even if unambiguous*, to conform the terms to the settlor's intention if it is proved by clear and convincing evidence that both the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement." (emphasis added)).

[¶27] Shea acceded to Connary's confinement of his motion for summary judgment to parts A and B of Count 2.  Specifically, Shea argued in a footnote in his opposing memorandum that the reformation claim set forth in part C of Count 2 should be dismissed for failure to state a claim upon which relief can be granted, *see* M.R. Civ. P. 12(b)(6), or that Connary should "voluntarily dismiss the[] reformation claim, but failing that, [Shea] would address it in a subsequent summary judgment motion or at trial."  Given the parties' agreement that part C of Count 2 was not a subject of Shea's motion for summary judgment, the summary judgment record did not include any statements of fact or evidence related to reformation.

[¶28] The court ruled on Count 2 in its entirety, which is understandable given the motion's language seeking summary judgment "on Count II of the[] Second Amended Complaint" without explicitly setting apart the reformation claim in part C.  In its summary judgment, the court "denied and *dismissed*" the reformation claim presented in part C of Count 2, though the court ultimately appears to have rejected Shea's invitation to dismiss the claim for failing to state a claim upon which relief can be granted.  (Emphasis added.)  Instead, the court ultimately concluded, in denying Connary's motion to strike the court's ruling on that claim, that the court's construction of the Trust negated the existence of

a mistake of fact or law, and that summary judgment was therefore appropriate. *See* 18-B M.R.S. § 415.

[¶29]  By statute, however, a "court may reform the terms of a trust, *even if unambiguous*, to conform the terms to the settlor's intention if it is proved by clear and convincing evidence that both the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement." *Id.* (emphasis added).  Thus, the court's conclusion that the Trust language was clear and plain in making a specific devise of the stock does not, as a matter of law, preclude reformation.  *See id.*; *see also* M.R. Civ. P. 56(c). There may be facts extrinsic to the Trust that demonstrate a mistake of fact or law necessitating reformation.  *See* 18-B M.R.S. § 415.  Because the parties agreed that the reformation issue was not before the court for purposes of summary judgment, they did not present facts on the claim, and the court was not in a position to conclude, as a matter of law, that there were no genuine issues of material fact on the issue of reformation and that Shea was entitled to summary judgment as a matter of law.  *See* M.R. Civ. P. 56(c).

[¶30]  We therefore vacate the judgment as to the reformation claim alleged in part C of Count 2 and remand that claim for further proceedings.

20

The entry is:

> Judgment on parts A and B of Count 2 affirmed. Judgment on part C of Count 2 vacated and remanded for further proceedings consistent with this opinion.

---

Jeremy W. Dean, Esq., Portland, and Eric R. Clark, Esq. (orally), Clark & Associates, Attorneys, Eagle, Idaho, for appellants Robert L. Connary et al.

Daniel A. Nuzzi, Esq., and Eamonn R.C. Hart, Esq. (orally), Brann & Isaacson, Lewiston, for appellees Richard A. Shea et al.

Cumberland County Superior Court docket number CV-2019-39
FOR CLERK REFERENCE ONLY