MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2024 ME 57
Docket:       Cum-23-74
Argued:       September 13, 2023
Decided:      August 6, 2024

Panel:        STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.*


ROBERT L. CONNARY et al.

v.

RICHARD A. SHEA et al.


STANFILL, C.J.

[¶1]  For the second time, the Connary heirs[1] appeal from a summary judgment entered by the Superior Court (Cumberland County, *O'Neil, J.*) in favor of the Shea brothers on Connary's claim for reformation of the Shea Family Living Trust.  In the proceedings leading to the first appeal, the court (*Stewart, J.*) concluded that the Trust's legacy to Connary of stock in a bank was a specific devise that had adeemed when the bank recalled and redeemed the stock, meaning that the stock was no longer part of the Trust and Connary was not entitled to a distribution of money to account for the stock's value.

---

* Although Justice Jabar participated in this appeal, he retired before this opinion was certified.

[1]  We use the term "Connary" or "Connary heirs" to refer collectively to appellants Robert L. Connary, Susan E. Napolitano, Patricia A. Narducci, James C. Clark, Margaret A. Gillett, and Eric R. Clark, the plaintiffs in the trial court.  We use the term "Shea" or "Shea brothers" to refer collectively to appellees Richard A. Shea, Dennis G. Shea, and William P. Shea, defendants in the trial court.

*Connary v. Shea*, 2021 ME 44, ¶¶ 8-9, 259 A.3d 118.  We affirmed the court's interpretation of the Trust, but we remanded the matter for the parties to litigate Connary's reformation claim.  *Id.* ¶¶ 25, 29-30; *see* 18-B M.R.S. § 415 (2024).  On remand, the court (*O'Neil, J.*) granted Shea's motion for summary judgment on the ground that Connary had not marshaled any admissible evidence generating a genuine dispute of fact as to the elements of the reformation claim.  Connary argues that the court erred in determining that the evidence Connary proferred in support of the reformation claim was inadmissible and urges us to conclude that, considering that evidence, a genuine dispute of material fact exists for trial.  We conclude that Connary's reformation claim cannot survive summary judgment even if he is correct that the disputed evidence may be considered, and we therefore affirm the judgment.

## I.  BACKGROUND

[¶2]  In our opinion deciding Connary's first appeal, we described the following relevant facts as revealed by the summary judgment record viewed in the light most favorable to the nonprevailing party, Connary.  *Connary,* 2021 ME 44, ¶¶ 1-6, 259 A.3d 118; *see, e.g.*, *Kurtz & Perry, P.A. v. Emerson*, 2010 ME 107, ¶ 15, 8 A.3d 677.  In July 2003, William and Patricia Shea established the

Shea Family Living Trust; they funded it, in part, with stock in a private, New-Hampshire-based bank and stock in General Electric. *Connary*, 2021 ME 44, ¶¶ 1, 4, 259 A.3d 118. The Trust's distribution plan included a provision that, upon the death of the survivor of William and Patricia, a successor trustee was to "take charge of the assets then remaining in" the Trust, pay the debts of the survivor and of the Trust, distribute the bank and General Electric stock to the Connary heirs (Patricia's nieces and nephews), and distribute all of the remaining "net proceeds of the trust" to the Shea brothers (William's children). *Id.* ¶¶ 4, 18 n.10.

[¶3] William died in 2006. *Id.* ¶ 5. That same year, the bank recalled and redeemed its stock, and the Trust received approximately $460,000. *Id.* During the twelve years that followed, these funds were commingled with other funds in the Trust's investment accounts. *Id.* After Patricia died in 2018, the successor trustee determined that the bank stock was no longer part of the Trust and informed Connary that he could not distribute any money to Connary in lieu of the bank stock.[2] *Id.* ¶ 6.

---

[2] The successor trustee liquidated the General Electric stock and distributed the proceeds to the Connary heirs; there is no dispute about this distribution. *Connary v. Shea*, 2021 ME 44, ¶ 6, 259 A.3d 118.

4

[¶4]  In October 2019, Connary filed the operative nine-count second amended complaint against Shea and the Trust.[3]  In what were styled as parts "(A)" and "(B)" of Count 2, Connary requested a declaratory judgment stating that the Trust unambiguously provided to him "the '[p]roceeds' from the involuntary redemption and sale of" the bank stock or, if the Trust was ambiguous, that Patricia "intended to gift any proceeds" from the redemption of the bank stock to him.  In part "(C)" of Count 2, Connary asked the court to reform the Trust to "conform to [Patricia's] intentions" that "[t]he proceeds [were] to be distributed" to him.

[¶5]  The parties filed cross-motions for summary judgment on Count 2. *Id.* ¶ 8.  Connary argued that the Trust's provision relating to the bank stock was a general devise that entitled him to proceeds from the 2006 redemption, and Shea argued that the provision was a specific devise that had adeemed when the redemption occurred. *Id.* ¶¶ 8, 26.  The court (*Stewart, J.*) agreed with Shea and granted his motion for summary judgment. *Id.* ¶¶ 9, 28.  Although the

---

[3]  The complaint also named one of the Shea brothers, Richard Shea, in his capacity as the successor trustee.  The nine counts alleged were: breach of fiduciary duty by the successor trustee and replacement of the successor trustee (Count 1); declaratory judgment on the interpretation of the Trust or reformation of the Trust (Count 2); breach of fiduciary duty by the successor trustee (money damages) (Count 3); injunctive relief enjoining the successor trustee from making any further distributions (Count 4); return of any improper distributions (Count 5); breach of fiduciary duty by the successor trustee via conversion of trust assets (Count 6); and breach by the successor trustee of the duties of impartiality and loyalty, and the duty to protect beneficiaries' interests (Counts 7 through 9).

parties had not addressed Count 2(C), Connary's claim for reformation, the court "denied and dismissed" that claim, later stating that it had entered a summary judgment on Count 2 as a whole based on its conclusion that the Trust's distribution plan plainly provided for a specific devise of the bank stock. *Id.* ¶¶ 8-9, 26-28 (quotation marks omitted).

[¶6] Connary appealed,[4] and we affirmed the judgment as to Counts 2(A) and 2(B), agreeing with the trial court that the Trust language "reflect[ed] a plain and clear intent by William and Patricia to create a specific gift" of the bank stock to Connary and that the stock had adeemed because no shares remained in the Trust at the time of Patricia's death. *Id.* ¶¶ 13-21, 25 (quotation marks omitted). Turning to Connary's reformation claim as reflected in Count 2(C) of the complaint, however, we observed that this interpretation of the Trust document did not necessarily preclude a viable claim for reformation. *Id.* ¶ 29; *see* 18-B M.R.S. § 415 ("The court may reform the terms of a trust, *even if unambiguous*, to conform the terms to the settlor's intention if it is proved by clear and convincing evidence that both the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement." (emphasis added)). Because "facts extrinsic to the Trust" might

---

[4] The parties had, by then, stipulated to the entry of a final judgment in favor of the Shea brothers on all of the other counts of Connary's complaint.

6

"demonstrate a mistake of fact or law necessitating reformation" and the parties had not specifically litigated the reformation claim as part of the summary judgment proceedings, we vacated that portion of the judgment and remanded the matter for further proceedings on the reformation claim. *Connary*, 2021 ME 44, ¶¶ 29-30, 259 A.3d 118.

[¶7] On remand, Shea moved for summary judgment on the reformation claim. *See* M.R. Civ. P. 56. Connary opposed the motion and filed a statement of additional material facts that he contended raised a disputed issue for trial. *See* M.R. Civ. P. 56(h)(2). That filing included (1) statements that Patricia had, in 2016 and 2018, indicated to various family members that she intended for Connary to receive "Uncle Pete's money," an apparent reference to the bank and General Electric stock; and (2) statements that the attorney who drafted the Trust document for Patricia and William did not question Patricia about her intent in the event that the bank stock no longer existed in the Trust at the time of her death. Shea objected to and qualified many of these statements, arguing that the evidence cited was inadmissible and, in any event, did not support the statements. *See* M.R. Civ. P. 56(e), (h)(2), (4).

[¶8] In January 2023, the trial court (*O'Neil, J.*) held a hearing on the summary judgment motion, during which Connary acknowledged that the

alleged oral declarations by Patricia to family members were "the only evidence of her intent other than the four corners of the [Trust] document." Shea again argued that evidence of the oral declarations was inadmissible and that Connary had therefore failed to raise a genuine fact issue for trial on his reformation claim. After the hearing, the trial court issued a written order granting Shea's motion. Citing *Estate of Utterback*, 521 A.2d 1184, 1187-88 (Me. 1987), the court concluded that it could not consider the evidence of Patricia's statements of intent and that Connary had not presented any other evidence generating a genuine dispute of fact material to his reformation claim. Connary appealed.

## II. DISCUSSION

[¶9] Connary argues that the statements by Patricia and the drafting attorney were admissible and, taken together, generate a genuine dispute of fact material to their claim that Patricia was mistaken about the meaning of the Trust's language. We review a trial court's grant of a motion for summary judgment de novo, viewing the properly supported facts in the summary judgment record in the light most favorable to the nonprevailing party to determine whether a genuine issue of material fact exists.[5] *See Day's Auto Body,*

---

[5] "A fact is material if it has the potential to affect the outcome of the suit, and an issue of material fact is genuine when a fact-finder must choose between competing versions of the truth, even if one

8

*Inc. v. Town of Medway*, 2016 ME 121, ¶ 6, 145 A.3d 1030; *see* M.R. Civ. P. 56(c).

"A defendant who is the moving party has the initial burden to establish that there is no genuine dispute of fact and that the undisputed facts would entitle the defendant to judgment as a matter of law at trial.  The nonmoving plaintiff must then demonstrate that material facts are disputed and must make out a prima facie case for its claim." *Oceanic Inn, Inc. v. Sloan's Cove, LLC*, 2016 ME 34, ¶ 26, 133 A.3d 1021 (citation, alteration, and quotation marks omitted).  "[A] party's assertion of material facts must be supported by record references to evidence that is of a quality that would be admissible at trial."  *HSBC Mortg. Servs., Inc. v. Murphy*, 2011 ME 59, ¶ 9, 19 A.3d 815; *see* M.R. Civ. P. 56(e), (h)(4).

[¶10]  The substantive elements of a claim for reformation of a trust are set forth in 18-B M.R.S. § 415:

> The court may reform the terms of a trust, even if unambiguous, to conform the terms to the settlor's intention if it is proved by clear and convincing evidence that both the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement.

The statute became effective in July 2005 when the Maine Uniform Trust Code took effect.  18-B M.R.S. § 1103 (2024); P.L. 2003, ch. 618, §§ A-1, A-2.  Prior to that enactment, our common law regarding reformation permitted a court to

---

party's version appears more credible or persuasive."  *Day's Auto Body, Inc. v. Town of Medway*, 2016 ME 121, ¶ 6, 145 A.3d 1030 (quotation marks omitted).

"modify testamentary trust provisions where the modifications (1) relate[d] to administrative, as opposed to dispositive, provisions, (2) [were] required by necessitous circumstances, and (3) [were] consistent with the settlor's primary intent." *Estate of Burdon-Muller*, 456 A.2d 1266, 1271 (Me. 1983) (quotation marks omitted). Section 415 "exten[ded]" Maine law by enabling courts to reform dispositive (rather than only administrative) trust provisions in case of mistake and by adopting the standard of proof by clear and convincing evidence to "offset somewhat the expansion of the court's power to reform." 18-B M.R.S.A. § 415 Unif. Tr. Code Me. cmt. (2024); *cf.* 18-B M.R.S. § 106 (2024) ("The common law of trusts and principles of equity supplement this Code, except to the extent modified by this Code or another statute of this State."). Save for our earlier decision in this matter, in which we made clear that a definitive interpretation of a trust instrument's text as unambiguous does not preclude a reformation claim under the plain terms of section 415, *see Connary*, 2021 ME 44, ¶ 29, 259 A.3d 118, we have neither interpreted section 415 nor examined what types of evidence may be considered by a fact-finder adjudicating a claim under section 415.

[¶11] Connary argues that the court erred by ruling that the evidence of Patricia's statements to others about her wishes, even if otherwise admissible

under the rules of evidence,[6] is inadmissible for the purpose of proving the elements of his reformation claim. In so ruling, the court relied on *Estate of Utterback*, where we reiterated the common law rule that a testator's extrinsic declarations are inadmissible to prove testamentary intent, even where the declaration would otherwise be admissible under the Maine Rules of Evidence. 521 A.2d at 1187-88; *see also Farnsworth v. Whiting*, 66 A. 831, 833 (Me. 1906); *Bryant v. Bryant*, 151 A. 429, 432 (Me. 1930); *First Portland Nat'l Bank v. Kaler-Vaill Mem'l Home*, 155 Me. 50, 62-66, 151 A.2d 708, 715-16 (Me. 1959); *Lord v. Soc'y for Pres. of New Eng. Antiquities, Inc.*, 639 A.2d 623, 624 n.5 (Me. 1994); *Maietta v. Winsor*, 1998 ME 84, ¶ 7, 710 A.2d 238; *Estate of Lord*, 2002 ME 71, ¶¶ 11-14, 795 A.2d 700; *see also, e.g.*, M.R. Evid. 803(3); *cf. Morrill v. Morrill*, 1998 ME 133, ¶ 4, 712 A.2d 1039 (explaining when the *Utterback* rule does and does not apply). Connary argues that the common law rule has lost its vitality in light of the enactment of section 415. Shea urges us to hew to our precedent in excluding the statements. The parties agree that, without the statements, Connary's reformation claim cannot survive the summary judgment motion.

---

[6] "A statement of the declarant's then-existing state of mind," including a statement of intent, is an exception to the rule against hearsay. M.R. Evid. 803(3).

[¶12]  The statute is modeled on the Restatement's reformation rule, although its language is not identical.  18-B M.R.S.A. § 415 Unif. Tr. Code cmt.; *see* Restatement (Third) of Prop.: Wills and Donative Transfers § 12.1 (Am. Law Inst. 2024).  The Restatement rule is stated as follows:

> A donative document, though unambiguous, may be reformed to conform the text to the donor's intention if it is established by clear and convincing evidence (1) that a mistake of fact or law, whether in expression or inducement, affected specific terms of the document; and (2) what the donor's intention was.  In determining whether these elements have been established by clear and convincing evidence, direct evidence of intention contradicting the plain meaning of the text as well as other evidence of intention may be considered.

Restatement (Third) of Prop.: Wills and Donative Transfers § 12.1.

[¶13]  Like section 415, the Restatement rule imposes a heightened burden of proof on a party seeking to reform unambiguous trust language.  The Restatement explains, "The objective of [a blanket rule excluding extrinsic evidence of the donor's intention], to prevent giving effect to mistaken or fraudulent testimony, is sufficiently served by subjecting extrinsic evidence that contradicts what appears to be the plain meaning of the text to a higher than normal standard of proof, the clear-and-convincing-evidence standard."  *Id.* cmt. d.  Similarly, the Uniform Comment to section 415 explains, "Because reformation may involve the addition of language to the instrument, or the

12

deletion of language that may appear clear on its face, reliance on extrinsic evidence is essential. To guard against the possibility of unreliable or contrived evidence in such circumstance, the higher standard of clear and convincing proof is required." 18-B M.R.S.A. § 415 Unif. Tr. Code cmt.

[¶14] According to the Restatement, this approach to adjudicating reformation claims—"high-safeguard allowance of extrinsic evidence" rather than total exclusion of inherently suspect extrinsic evidence of intent— "achieves the primary objective of giving effect to the donor's intention." Restatement (Third) of Prop.: Wills and Donative Transfers § 12.1 cmt. b. Indeed, the Restatement contemplates that the full range of extrinsic evidence of donor intent should be considered. *Id.*; Restatement (Third) of Prop.: Wills and Donative Transfers § 10.2 & cmts. e-f (Am. L. Inst. 2003). Specifically, "oral and written testimony concerning the donor's declarations of intention should be held admissible under exceptions to the hearsay rule." *Id.* § 10.2 cmt. h.

[¶15] The Maine Uniform Trust Code does not include a provision mirroring section 10.2 of the Restatement. *See* 18-B M.R.S. §§ 101-2119 (2024). We nonetheless share Connary's concern about the continuing vitality of the *Utterback* rule excluding otherwise admissible statements of testamentary intent, which may be necessary to prove that intent.

[¶16]  However, we need not decide that issue here because, even if the evidence concerning Patricia's prior statements of intent is admissible, we conclude that Shea is entitled to judgment as a matter of law on the reformation claim and therefore affirm on alternate grounds.  *See Brooks v. Town of Bar Harbor*, 2024 ME 21, ¶ 7, 314 A.3d 205 ("[W]e may affirm a summary judgment on alternative grounds from the trial court decision when we determine, as a matter of law, that there is another valid basis for the judgment." (quotation marks omitted)); *see also Puritan Med. Prods. Co. LLC v. Copan Italia S.p.A.*, 2018 ME 90, ¶ 28, 188 A.3d 853.

[¶17]  Reformation is available "to conform the terms to the settlor's intention" only if it is proven that "both the settlor's intent and the terms of the trust were affected by a mistake."  18-B M.R.S. § 415.  The statute refers to the "settlor" in the singular, but in this case two settlors, Patricia and William, created the Trust together.

[¶18]  Although this appears to be an issue of first impression in Maine, we are satisfied that reformation is appropriate only if necessary to conform to the terms of *both* settlors' intention.  *Cf. Ike v. Doolittle*, 70 Cal. Rptr. 2d 887, 890-91, 902-07 (Ct. App. 1998) (reforming ambiguous trust provisions based on extrinsic evidence of two settlors' shared intent).  In other words, Connary

must prove that both Patricia and William were mistaken about what would occur in the event of the stock recall in order to prevail on a reformation claim. "The cardinal rule is to give effect to the intention of the settlor[s] gathered from the language of the trust, bearing in mind that such intention must be related to the time the trust was executed." *Connary*, 2021 ME 44, ¶ 13, 259 A.3d 118 (alteration and quotation marks omitted). We cannot reform a trust to conform to the intent of one settlor when doing so is or may be contrary to the intent of the other settlor as expressed in the instrument. Reformation is available only when necessary to give effect to the intent of all settlors.

[¶19]  Here, the record contains scant evidence of William's intent generally and no evidence that could support a finding that William mistakenly believed the Trust provided for Connary to receive proceeds from any future recall of the bank stock. Even if we were to consider Patricia's extrinsic statements of intent, therefore, Shea is still entitled to summary judgment in his favor.

[¶20]  Moreover, section 415 is modeled on the Restatement's rule for reformation of trusts, 18-B M.R.S.A. § 415 Unif. Tr. Code cmt.; *see* Restatement (Third) of Prop.: Wills and Donative Transfers § 12.1, and the Restatement describes limitations on the scope of reformation, Restatement (Third) of Prop.:

Wills and Donative Transfers § 12.1 cmt. h. "Reformation is a rule governing mistakes in the content of a donative document, in a case in which the donative document does not say what the transferor meant it to say. Accordingly, reformation is not available to . . . modify a document in order to give effect to the donor's post-execution change of mind . . . or to compensate for other changes in circumstances . . . ." *Id.* Based on this principle, courts have declined to allow reformation where the claimed mistake involved a failure to predict future changes in circumstances that might affect the donor's wishes. *See id.* Rep.'s Note 8; *Penn Mut. Life Ins. Co. v. Abramson*, 530 A.2d 1202, 1211 (D.C. 1987) (holding that reformation was unavailable to add a life insurance beneficiary who had not been born at the time of execution, absent evidence "that the parties agreed on a specific term to cover after-born children, but mistakenly left such a term out of the policy"); *Estate of Dye*, 112 Cal. Rptr. 2d 362, 373 (Ct. App. 2001) (denying reformation because the testator's "mistake was his subsequent failure to execute a codicil or a new will to carry out his new intent" after a change in circumstances (quotation marks omitted)); *Morey v. Everbank*, 93 So. 3d 482, 491 (Fla. Dist. Ct. App. 2012) ("Reformation is not available to modify the terms of a trust to effectuate what the settlor would

16

have done differently had the settlor foreseen a change of circumstances that

occurred after the instruments were executed.").

[¶21]  The facts of this case are analogous to the following illustration in

the Restatement:

> G's will devised his government bonds to his daughter, A, and the
> residue of his estate to a friend.  Evidence shows that the bonds are
> worth only half of what they were worth at the time of execution of
> the will and that G would probably have left A more had he known
> that the bonds would depreciate in value.

> This evidence does not support a reformation remedy.  G's mistake
> did not relate to facts that existed when the will was executed.

Restatement (Third) of Prop.: Wills and Donative Transfers § 12.1 ill. 3.

Evidence that Patricia and William would have intended for Connary to receive

money had they known that the bank would recall and redeem its stock before

the distribution provision took effect is evidence of a "mistake [that does] not

relate to facts that existed when the [Trust] was executed."  *Id*.  "This evidence

does not support a reformation remedy."  *Id.*

[¶22]  We are thus persuaded that reformation is unavailable in this case

because its only purpose would be to compensate for a change in circumstances

that occurred after the Trust was formed, when the bank recalled and

redeemed the stock at issue.  To survive summary judgment, Connary needed

to point to admissible evidence in the record sufficient to raise a genuine

dispute of fact about whether, *in 2003*, Patricia and William intended to include a Trust provision that would preserve proceeds for Connary in the event of a stock recall but mistakenly left that provision out of the Trust. *See id.* § 12.1 cmt. h. Connary's proffered evidence, even if admissible, does not raise a fact issue concerning Patricia's and William's intent in 2003. *See id.* § 12.1 ill. 3; *Abramson*, 530 A.2d at 1211.

[¶23]  Because Connary cannot point to evidence sufficient to raise a genuine dispute of fact material to the reformation claim, Shea is entitled to judgment as a matter of law on that claim. We therefore affirm the judgment. *See Brooks*, 2024 ME 21, ¶ 7, 314 A.3d 205.

The entry is:

Judgment affirmed.

---

Jeremy W. Dean, Esq. (orally), Portland, for appellants Robert L. Connary et al.

Daniel A. Nuzzi, Esq. (orally), and Eammon R.C. Hart, Esq., Brann & Isaacson, Lewiston, for appellees Richard A. Shea et al.

Cumberland County Superior Court docket number CV-2019-39
FOR CLERK REFERENCE ONLY