Isaac M. Bates, Executor *vs.* Julia Schillinger et al.

Penobscot.     Opinion March 11, 1929.

*J. W. Manson,*
*W. B. Pierce,* for plaintiff.
*Henry W. Mayo,*
*Gillen & Gillen,*
*Steuart & McCaughan,* for defendants.

SITTING: WILSON, C. J., PHILBROOK, DUNN, BARNES, BASSETT, PATTANGALL, JJ.

BASSETT, J.    Bill in equity brought by the executor of the will of Lovina White, late of Corinna, to construe the will and to determine whether a specific bequest under the seventeenth paragraph and the bequest of the residue under the nineteenth paragraph of the will are valid. The will was executed July 21, 1920. She died October 30, 1925. The case was reserved by the sitting Justice with the consent of the parties for decision by this court on the legally admissible evidence of the record.

The will, after providing for specific bequests to fourteen individuals and a bequest in trust to the Town of Corinna for the

perpetual care of her family lot, provided in paragraph seventeenth, "I give and bequeath unto the Methodist Episcopal Church Society of Corinna, Maine, the sum of two hundred dollars, to be used for the said Society in any way it may deem best."

Paragraph nineteenth provided that the residue be held in trust to use the income to aid a niece during her life as in the discretion of the trustee it was from time to time needed for that purpose, "and at her decease I give and bequeath all such principal and the income not so used under the trust, unto the Methodist Episcopal Church Society of Corinna, Maine, to be used as shall seem best in the discretion of said Society. Should said Society not be in existence at the termination of said trust, then and in that case, I give and bequeath said remainder unto such Society as shall be the successor of said Methodist Episcopal Church Society, and the same directions as to its use shall apply as I have made in behalf of said Methodist Episcopal Church Society."

The niece died during the life of the testatrix.

From the admissible evidence, it appeared that at the date of the will and of the death of Mrs. White and for many years prior thereto, there was in Corinna a voluntary, unincorporated association of individuals known as and generally called the Methodist Episcopal Church, but also called the Methodist Episcopal Church Society. The association was the only one in Corinna known or called by either of these names. It occupied and used a church edifice in which were held meetings and religious services of the association, conducted by a resident pastor who was a minister of the Methodist Episcopal Church. Such services had been attended by Mrs. White up to and for many years prior to her decease.

Meetings called "Quarterly Conferences" were held annually in and for the "District" in which Corinna was located, and such Conferences were held in 1923 and 1924 and attended by the "District Superintendent" whose duty it was to attend them. Failure to produce the original records of these meetings was duly accounted for, and by proper secondary evidence it appeared that there was submitted to the Superintendent at each of the Conferences for his approval, the nomination of Lovina White as "steward" of the Corinna association, that he approved the nomination, and that she was elected.

It is a matter of common observation that the terms "church" and "society" are popularly used to express the same thing, namely, a religious body organized to sustain public worship. *Church and Congregational Society* v. *Hatch*, 48 N. H., 393, 396; *Josey* v. *Union Loan & Trust Co.*, 32 S. E., 628 (Ga.). They were used interchangeably as to this association. *Brackett* v. *Brewer*, 71 Me., 484.

Evidence is admissible to identify a devisee or legatee. *Preachers' Aid Society* v. *Rich*, 45 Me., 552; *Howard* v. *American Peace Society*, 49 Me., 288; *Ladd* v. *Baptist Church*, 124 Me., 386; *Norwood* v. *Packard*, 125 Me., 220; *Trust Company* v. *Pierce*, 126 Me., 67; *First Parish in Sutton* v. *Cole,* 3 Pick., 232; *Tucker* v. *Seaman's Aid Society*, 7 Met., 188; *Church and Congregational Society* v. *Hatch*, supra.

The evidence above stated is sufficient, without considering the admissibility of other evidence to the admission of which objection was made, to establish that Mrs. White intended to designate as her legatee this one association with which she had been connected and called by the name of either the Methodist Episcopal Church or Methodist Episcopal Church Society.

It was not established by admissible evidence that there were duly elected "stewards or trustees of the Methodist Episcopal Church" or "trustees of the local Methodist" church within the provisions of Rev. Stat., Chap. 17, Sec. 19. Nor was there evidence that a corporation was organized as therein provided. The bequests therefore do not appear to be gifts to a corporation under the statute. In *Ladd* v. *Baptist Church*, supra, referred to by counsel, the opinion states that the church was incorporated and no question appears to have been raised about its incorporation.

This court in *Pushor* v. *Hilton*, 123 Me., 227, reserved decision of the question whether a devise or bequest directly to a voluntary association can be upheld. The association in that case was admittedly not a charitable organization. Neither shall we consider the question of the validity of such a direct bequest even to an organization assumed to be charitable.

The only question we shall consider is whether these bequests are valid charitable trusts. Charitable trusts are always favorites of the law and in construing them, a liberal policy has been con-

stantly and consistently maintained by this court, *Bills* v. *Pease*, 116 Me., 100; *Prime* v. *Harmon*, 120 Me., 303, in harmony with the general rule, *Jackson* v. *Phillips*, 14 Allen, 539, 550; 5 R. C. L., 352, Sec. 89; 11 C. J., 307, Sec. 12.

The definition of a "charitable trust" or a "public charity" as given in *Jackson* v. *Phillips*, supra, has been adopted and applied in this state. *Bills* v. *Pease*, supra; *Haskell* v. *Staples*, 116 Me., 103. "A charity in the legal sense, may be more freely defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burden of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature."

The heirs at law deny that valid charitable trusts were created by the will, contending, in the first place, that the beneficiaries of a charitable trust must be indefinite but capable of being ascertained; that they can not be ascertained here because the society has no records disclosing who constitute it and the trustee can not select, as he must, the members of a society which has no record of its membership, and therefore that the trust fails; but further that, if the members were accurately ascertainable, they would no longer be indefinite, and therefore again the trust fails.

The major premise of this argument, that the beneficiaries must be indefinite but capable of being ascertained, contains a fallacy. Beneficiaries is there used with two meanings, one for the qualifying word "indefinite," another for the qualifying words "capable of being ascertained." The former looks to the future and means the beneficiaries who may be such. They must be indefinite, "an unascertained, uncertain, fluctuating body of individuals." *Doyle* v. *Whalen*, 87 Me., 425; *Hospital Association* v. *McKenzie*, 104 Me., 327; *Bills* v. *Pease*, supra. The latter looks to a given moment and means the beneficiaries then entitled to receive the benefit of the trust and whom the trustee selects therefor. In a valid public charitable trust at a given moment, all the beneficiaries who may

in the future become such can not and ought not to be ascertainable, but the beneficiaries who are such must be ascertainable.

If, therefore, the members of this association had records by which its membership at the death of Mrs. White could be accurately ascertained, such present ascertainability would not have *ipso facto* made definite the required indefiniteness of the beneficiaries in the future with consequent failure of the trust, as contended by the heirs.

If Mrs. White had intended to give the bequests to the society, as it was at her decease comprised of its then and ascertainable members, a different question would be presented. The members, if held to be beneficiaries of a trust, would have been certain and designated individuals, known persons or class of persons and the question of a "private," as distinguished from a public or charitable, trust would have arisen. *Doyle* v. *Whalen, supra.*

The test therefore is whom did Mrs. White intend to designate as beneficiaries of her bounty and not the record of the membership of the Society. We think, as considered below, that she had in mind and intended the indefinite, fluctuating membership of the Society, not its actual then membership at her decease.

The contention, however, that members of the society can not be ascertained because there are no records, errs in two respects. It can not be said there are no records of the association. There was at the hearing a record book in the possession of the association not put into evidence by the association or by the heirs. What the book showed did not appear. Again, records would be primary evidence of membership, but if not available, secondary evidence would be admissible. Evidence of the membership of a voluntary unincorporated association is not confined to records. There was uncontradicted admissible evidence that the Methodist Episcopal Church of Corinna had a definite membership "capable of being determined from its record or *by other means.*"

The heirs contend, in the second place, that the purpose of a charitable trust must be limited to charitable objects; that if the trustee is given discretion to apply the trust property to purposes not charitable — and that there was such discretion here — the trust fails.

A valid charitable bequest must be for a purpose recognized in

20

law as charitable. A religious purpose is a charitable purpose and has been uniformly so recognized and by this court. *Maine Baptist Missionary Convention* v. *Portland,* 65 Me., 92; *Straw* v. *East Maine Conference,* 67 Me., 493; *Prime* v. *Harmon,* supra. The very term church imports an organization for religious purposes, and property given to it *eo nomine* in the absence of all declaration of trust or use must by necessary implication be intended to be given to promote the purposes for which a church is instituted. *Baker* v. *Fales,* 16 Mass., 488; *Sears* v. *Attorney General,* 193 Mass., 551, 555; 11 C. J., 320, Sec. 24.

Bequests therefore to a Methodist Episcopal Church Society without declaration or restriction as to the use to be made of the subject matter of the gift must be deemed a gift for the promotion of the objects of the Society and given for a charitable purpose.

The purposes for which such bequest can be used must be charitable only. If the intention of the testator was that the gift could be used for other than charitable uses, it is fatal to the validity of the bequest. If a part may be so otherwise used, all of it may be. *Fox* v. *Gibbs,* 86 Me., 87, 94; *Tappan* v. *Deblois,* 45 Me., 122, 129; *Murdock* v. *Bridges,* 91 Me., 124, 132; *Prime* v. *Harmon,* supra, 301.

The purpose of the specific bequest in paragraph seventeenth was expressed in these words, "to be used *for* the said Society in any way it may deem best." "For," not "by," was used. "For" connotes "the end with reference to which anything is, acts, serves, or is done." *Webster's International.* The Society can in its discretion select the "way," the particular, specific form or forms of use, but any such use must be "for the said Society." These words constitute a limitation on the manner in which the bequest could be used. *Pratt* v. *Miller,* 37 N. W., 263, 265 (Neb.). The limitation necessarily implies a use for the object and purpose of the Society and these are religious and charitable. The purpose of this bequest is therefore clearly and wholly charitable.

The purpose of the residuary bequest in paragraph nineteenth is "to be used as shall seem best in the discretion of the Society."

"For" was not used; but neither was "by" used. The will taken as a whole indicates clearly an intent to provide bequests for the benefit of the various donees only. The income of the trust for the

niece "must be used only for her personal aid and comfort and not for the help of any other member of her family." Two paragraphs following the nineteenth completed her will, the twenty-first appointing the executor, and the twentieth as follows: "I hereby declare it to be my intention, and I do hereby debar every person whether of any degree of kindred or not, except those named herein either individually, the Town of Corinna or the said Society, from sharing in any way in the distribution of my estate, real, personal or mixed. Meaning that all named herein shall be all that shall have a distributive share in my estate." To find in the language of paragraph nineteenth an intent of the testatrix to provide for the Society a bequest differing from the preceding specific bequest and, after limiting the latter to the purpose and object of the Society, to permit the Society to use the residuary bequest for any purpose whatever with unlimited discretion and whether for its benefit or not, is to find an intent that does not harmonize with the will as a whole and read in the light of the surrounding circumstances. We do not so construe the language. We think that the words, "for the said Society," are impliedly to be found in paragraph nineteenth as they were expressly used in paragraph seventeenth and that both bequests were given for the purpose and object of the Society. The purpose of the residuary bequest was therefore wholly charitable.

So, too, taking the will as a whole, the intent of the testatrix to give the bequests to the association with a membership indefinite and fluctuating, and not as constituted at her decease, seems clear. The amounts of the specific and residuary bequests differ, but there is no direction or implication for any immediate use of either for the church as then constituted. She intended a specific bequest to this religious association and then more if there were a residue unused for the niece. We do not find any different intent, express or implied, in either bequest. Further, the residuary bequest, if the Society were not in existence at the expiration of the trust for the niece, was given to the successor of the Society. In both bequests, she appears to have had in mind an indefinite, continuing religious body.

The bequests were valid charitable trusts in their purposes and beneficiaries.

No trustee is named in the will, but a court of equity will not allow a gift for charitable uses, otherwise valid, to fail for want of a trustee but will itself administer the trust or appoint a trustee to administer, *Wentworth* v. *Fernald*, 92 Me., 291 ; *Hospital Association* v. *McKenzie*, 104 Me., 327 ; 11 C. J., 332, Sec. 48, although the gift for such use is to a voluntary association or unincorporated society which is uncertain, indefinite and fluctuating. *Swasey* v. *American Bible Society*, 57 Me., 523.

It may appear upon further hearing by the court below that there are trustees of the association, or trustees may be elected by or for the association, legally empowered to receive the property of these trusts and administer them. If not, the court may appoint.

The plaintiff may have costs and reasonable counsel fees to be determined by the sitting Justice and paid out of the estate.

The mandate will be

> *Bill sustained.*
> *Decree in accordance with opinion.*