**ATTORNEY GENERAL**

v.

**FIRST UNITED BAPTIST CHURCH OF LEE.**

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 22, 1991.

Decided Jan. 3, 1992.

---

Charles E. McFarland, Newton Falls, Ohio, Patrick Hunt, Island Falls, for plaintiff.

Michael E. Carpenter, Atty. Gen., Francis E. Ackerman, Leanne Robbin, Asst. Attys. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

COLLINS, Justice.

The First United Baptist Church of Lee appeals from a Superior Court (Penobscot County, *Smith, J.*) decision, ordering the Church to account for the assets of the Cobb trust. The Church argues that because it is both the trustee and sole beneficiary of the trust, that the legal and equitable title to the trust have merged upon the expiration of the restraint on alienation giving the Church complete ownership, or in the alternative, that even if the trust is public, the Attorney General cannot order an accounting without infringing upon the Church's constitutionally guaranteed religious freedoms. We find that the Cobb trust is a public trust and that contrary to the Church's contention the Superior Court's order of accounting does not entangle the State or the court in matters of religious doctrine.

Charles H. Cobb was born on a farm near Lincoln in 1852. He achieved great financial success and near the end of his life, while residing in California, he set up a number of philanthropic trusts. One of these trusts is the subject of this appeal.

In 1935, Cobb entered into an agreement with the First United Baptist Church of Lee. The agreement provided that on the termination of several existing life estates, the Church, as remainderman, would receive "certain stocks and/or intangible securities." The gift was made subject to two conditions. First, the Church was to "hold the same and use the proceeds therefrom for charitable uses and purposes."

Second, the Church was not to sell, transfer, pledge, or alienate the securities for a period of fifty years following their distribution to the Church. Cobb died in 1939, and the securities were distributed to the Church.[1]

In 1983, after faithfully observing the terms of the trust for forty-four years, the Church filed a complaint seeking relief from the restraint on alienation. The Church noted that the value of the securities had fallen dramatically and the rate of return was substantially less than could be achieved by reinvesting the corpus. The Church named the Attorney General as defendant, in his capacity as the officer of the State charged with enforcing due application of charitable funds given to public charities in Maine, pursuant to 5 M.R.S.A. § 194. The Church and the Attorney General negotiated a settlement and entered into a consent decree. The decree allowed the Church to sell the securities and reinvest the proceeds "in an alternate form of prudent investment" in order "to protect the corpus of the trust of which they are trustees" and to achieve a greater return on the investment. At that time the trust was valued at $733,924.

In August of 1987, after receiving information suggesting the trust's assets were being misapplied, the Attorney General informally requested an accounting. The minister of the Church told the Attorney General that the Church would not comply with his request. On May 6, 1988, the Attorney General filed a complaint seeking to compel an accounting of the Cobb trust. After a hearing, the Superior Court ordered the Church to provide the Attorney General with an accounting of the trust and this appeal followed.

I

■ The Church argues that the expiration of the fifty year restraint on alienation in 1989 gives it full legal title to the trust

---

1. While the agreed upon statement of facts provides that Mr. Cobb died in 1939, an earlier case, *Town of Lee v. Town of Lincoln*, 351 A.2d 554, 556 (Me.1976), that interpreted the provisions of another charitable trust established by Mr. Cobb, provided, also in an agreed upon statement of facts, that he died in 1942.

property. The Attorney General sought to compel an accounting in May of 1988, prior to the restraint's expiration and before title could have vested in this manner. Furthermore, as the Superior Court correctly held, Cobb made the community at large a beneficiary of the trust. While the Church is the sole named beneficiary of the trust:

> The definiteness of the corporation as the beneficiary of the main trust should be no obstacle to classifying the trust as charitable since in practical effect there will be a wide distribution of social advantages among members of the community as beneficiaries of the subtrust.

Bogert, *Trusts and Trustees*, § 362 (1977). Because Cobb intended that the community at large benefit from the trust, the Church is not the sole beneficiary and there is no merger on the expiration of the restraint on alienation because the limitation on the use of the funds for charitable purposes persists.

## II

■ The Church's use of the monies is limited by the trust agreement's plain language. It is to be used only for "charitable uses and purposes." This arrangement comports with the definition of a public trust we adopted in *Fitzgerald v. Baxter State Park Auth.*, 385 A.2d 189 (Me.1978). A public trust is "a fiduciary relationship with respect to property arising as a result of a manifestation of an intention to create it, and subjecting the person by whom the property is held to equitable duties to deal with the property for a charitable purpose." *Id.* at 194 (citing *Restatement (Second) of Trusts* § 348 (1959)). "Where property is given to a charitable corporation and it is directed by the terms of the gift to devote the property to a particular one of its purposes, it is under a duty, enforceable by the Attorney General, to devote the property to that purpose." *Restatement (Second) of Trusts* § 348, comment *f* (1959).

The Church acknowledged this authority in 1983 when it sued the Attorney General for permission to reinvest the trust monies. The Church named the Attorney General as defendant in its suit because of his authority under 5 M.R.S.A. § 194. At that time the Church felt that enforcement of the provisions of the Cobb Trust was the Attorney General's responsibility, or in other words that the Cobb Trust was a public trust, separate and distinct from the Church. Principles of *res judicata* resolve the Cobb Trust's status as a public trust prior to the 1983 consent decree. *See Sevigny v. City of Biddeford*, 344 A.2d 34, 38 (Me.1975). The only way the Church can argue that the Cobb Trust is not a public trust subject to the Attorney General's statutory authority, is to show that somehow the 1983 consent decree altered a fundamental aspect of the trust.

The Church claims that the 1983 consent decree lifted the restraint on alienation and merged title to the trust in Church. However, all the decree allowed the Church to do was sell the securities and reinvest the proceeds "in an alternate form of prudent investment" in order "to protect the corpus of the trust of which they are trustees" and to achieve a greater return on the investment. The conditions imposed on how the funds could be reinvested would be mere surplusage if the court's order had effectively merged full legal and equitable title in the Church. The limits placed on the reinvestment of the funds were within the purview of the Attorney General's statutory authority. The decree ensured that the settlor's intention that the corpus remain intact for fifty years would be honored. Therefore, the 1983 consent decree did not operate to change the nature of the trust from public to private or merge legal and equitable title in the Church.

■ The Cobb Trust is a public trust administered by the Church as trustee, for its benefit and the benefit of the community at large. Under 5 M.R.S.A. § 194 (1989), "[t]he Attorney General shall enforce due application of funds given or appropriated to public charities within the State and prevent breaches of trust in the administration thereof." Therefore, the Attorney General possesses the requisite statutory authority to compel an accounting of the Cobb trust's assets.

## III

The Church contends that even if the trust is public, the Attorney General cannot compel an accounting of the trust property without running afoul of the constitutional provisions, both state and federal, that guarantee religious freedoms. The Church argues that an inquiry into how it disburses the trust funds will entangle the court in matters of religious doctrine. *See Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). We have adopted the federal constitutional standards relevant to this appeal, so the Church's rights under the United States Constitution and the Maine Constitution are coextensive. *See Graffam v. Wray*, 437 A.2d 627, 633 (Me.1981).

Civil courts can constitutionally adjudicate property disputes involving religious organizations if they can be resolved in accordance with neutral principles of law and without interpretation of, or reference to, religious doctrine. *Jones v. Wolf*, 443 U.S. 595, 602, 99 S.Ct. 3020, 3024–25, 61 L.Ed.2d 775 (1979). We have held that a suit for an accounting of church funds is a property dispute capable of resolution by application of neutral principles of law. *Graffam v. Wray*, 437 A.2d 627, 635 (Me. 1981); *see also Synanon Foundation, Inc. v. California*, 444 U.S. 1307, 100 S.Ct. 496, 62 L.Ed.2d 454 (Rehnquist, Circuit Justice 1979) (holding that under *Jones* the California Attorney General could constitutionally intervene in the administration of a charitable trust even where the trustee of the trust was a religious organization).

The Attorney General is not attempting to inquire into the financial affairs of the Church, or impose a regulatory scheme, but only to obtain the information necessary for him to fulfill his statutory obligation to the public. Because we find that the Cobb trust is a public trust, separate and distinct from the Church, the court ordered accounting can be accomplished by application of neutral principles of law and therefore, does not impinge upon the Church's First Amendment freedoms.

The entry is:

Judgment affirmed.

All concurring.