MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2025 ME 2
Docket:       Ken-22-277
Argued:       May 10, 2023
Decided:      January 7, 2025

Panel:        STANFILL, C.J., and HORTON, LAWRENCE, and DOUGLAS, JJ., and HUMPHREY, A.R.J.

ATTORNEY GENERAL et al.

v.

PINE TREE COUNCIL, INC., BOY SCOUTS OF AMERICA

LAWRENCE, J.

[¶1]  The dispute in this case centers on the meaning of a 1944 deed placing in a charitable trust a 330-acre parcel of land for its use by the Boy Scouts of America for camping.  Pine Tree Council, Inc., Boy Scouts of America (Pine Tree) appeals from a summary judgment of the Superior Court (Kennebec County, *Murphy, J.*) entered against it on the Attorney General's complaint for breach of trust and on Pine Tree's counterclaims for declaratory judgment regarding its property rights in the land that was placed in the charitable trust.  Intervenors Bruce F. Rueger and Scott F. Adams, individually and on behalf of the Bomazeen Old Timers, an association of caretakers, scout leaders, organizers, and volunteers of the camp (collectively, the Old Timers), cross-appeal, arguing that the court erred in entering a summary judgment

2

against them on (1) their claim against Pine Tree for breach of fiduciary duties and (2) their request for the court to exercise its equitable powers to apply the cy pres doctrine.

[¶2]  We affirm the judgment against Pine Tree on the Attorney General's claim for breach of trust against Pine Tree and for a declaration restricting the use of proceeds from the sale of trust property to those uses that support camping activities for Boy Scouts in central Maine.  We also affirm the judgment against Pine Tree on its counterclaims for declaratory judgment against the Attorney General and the Old Timers regarding Pine Tree's property rights in the land that was placed in the charitable trust, and against the Old Timers on their claims.

## I. BACKGROUND

[¶3]   The following undisputed facts are drawn from the summary judgment record, which includes stipulated facts.  *See Oceanic Inn, Inc. v. Sloan's Cove, LLC*, 2016 ME 34, ¶ 26, 133 A.3d 1021 (stating that when the material facts are not in dispute, we review de novo the trial court's application of the law).  The procedural history is taken from the trial court record.

[¶4]  Through an instrument dated December 22, 1944, George G. Averill conveyed 330 acres of land, now known as Camp Bomazeen, to himself and others as trustees, and the instrument (the Averill Deed) was recorded in the

Kennebec County Registry of Deeds.  Camp Bomazeen has since been used as a camp for the Boy Scouts of America.  It is located within the Kennebec Valley District of the Pine Tree Council, Inc., Boy Scouts of America, a Maine public benefit corporation and public charity that carries out the Boy Scouts of America's mission in that district.  Pine Tree has been the council of the Boy Scouts of America with jurisdiction over Camp Bomazeen at all relevant times since 1944.

[¶5]  The Averill Deed that establishes the trust provides:

KNOW ALL MEN BY THESE PRESENTS,

That I, George G. Averill, . . . do hereby GIVE, GRANT, BARGAIN, SELL and CONVEY unto [listed individuals] as Trustees, their successor[s] and assigns, the [described premises] . . . TO HAVE AND TO HOLD the above granted and bargained premises with all the privileges and appurtenances thereof to the said [listed individuals], as Trustees, their successors and assigns forever in trust, nevertheless under the following terms, conditions, and provisions, to wit:

FIRST:  Said property is to be held by said Trustees for the use and benefit of members of the Boy Scouts of America, said premises to be at all times available for camping purposes to the troops and me[m]bers of the Boy Scouts of America, and especially for the troops and members of the Boy Scouts of America in the central part of the State of Maine.

. . . .

THIRD:  Said Trustees, in addition to holding the title of said property will have the general superintendence and oversight of the same, and are empowered to receive and hold money, chattels,

and all other property for the benefit of the above granted premises and for any camp or other establishment under the auspices of the Boy Scouts of America or any subsidiary thereof that may be located on said property or for any other activities connected with said premises which benefit the Boy Scouts of America or any subsidiary thereof.

FOURTH: . . . . The Trustees . . . may sell, bargain and transfer by a good and sufficient lease, mortgage, or deed any and all real and personal property held by it, provided, however, that written consent to do so is first given by the duly established Council of the Boy Scouts of America, under whose jurisdiction said premises are situated, or if no such Council exists, then from the National Office of the Boy Scouts of America . . . ; and provided further that the consideration derived by the Trustees from such a transaction shall be used for the purposes and under the conditions set forth in this Trust Indenture.

In the event of sale, lease, or mortgage of any property by said Trustees, the same shall be sold, leased, or mortgaged, free of each and all of the conditions set forth herein, and the purchaser, lessee, or mortgagee shall hold said title free and clear of each and all of the provisions and conditions set forth in this Deed and shall not be required to see to the application of the purchase, lease or mortgage money.

. . . .

SIXTH: In the event of the death, resignation, or inability to act, of any Trustee herein appointed, then the Executive Board of the Council of the Boy Scouts of America having jurisdiction . . . shall appoint a successor from the vicinity in which the former Trustee resided. . . .

SEVENTH: Should Trustees fail to be appointed or the Trust fail for any reason, then and in such an event title to the said property herein conveyed and all other property real, personal, or mixed, which has been received by said Trustees under the terms of this Trust shall vest in the duly incorporated Council of the Boy Scouts

of America having jurisdiction of the area in which said camp is situated; or, if such Council is not active or for any reason refuses to accept the title, the said title shall vest in the said Boy Scouts of America . . . and it is further provided that either the said duly incorporated Council or the Boy Scouts of America may appoint a new Board of Trustees under such conditions and terms as they may see fit, consistent with the general purpose to this Trust. Said Trust shall be deemed to have failed if (without excludi[n]g other reasons) the Trustees or their appointed agents shall permit any taxes, assessments or other expenses to be in default for a period of two (2) years or if said property shall cease to be used for the purposes herein set forth for a period of three (3) years.

[¶6] In the last twenty years, Pine Tree has seen a decline in the number of scouts. In April 2008, there were no trustees because all prior trustees had died, had resigned, or were otherwise no longer serving as trustees, and no replacement trustees had been appointed. On April 2, 2008, Pine Tree executed and recorded a "Record Notice of Compliance with Provisions of Trust" in the Kennebec County Registry of Deeds stating that title to Camp Bomazeen had vested in Pine Tree. In 2020, Pine Tree entered into a purchase and sale agreement to sell Camp Bomazeen to an entity that is not a nonprofit corporation, and that agreement is contingent on this lawsuit's resolution. Pine Tree seeks to use the proceeds from the sale to pay down its debts, including debts and expenses not related strictly to Camp Bomazeen, and to otherwise support its operations.

6

[¶7] As the authority responsible for enforcing the terms of charitable trusts in Maine,[1] on February 26, 2021, the Attorney General filed a complaint against Pine Tree to enjoin it "from using proceeds from a sale of Camp Bomazeen for payment of operating expenses, general creditors or debt service," and to obtain a declaratory judgment that proceeds from the sale of the camp must "be held in trust for the purposes of directly supporting camping activities for Boy Scouts in the Pine Tree Council Region, with a preference for Boy Scouts from central Maine." *See* 5 M.R.S. § 194(2) (2024). The complaint alleged breach of trust via misuse of restricted charitable funds and alleged that Pine Tree's "planned use of the proceeds from the sale of Camp Bomazeen is not permitted by the terms of the gift."

[¶8] Pine Tree filed its answer and a counterclaim against the Attorney General on March 22, 2021. In Count 1 of its counterclaim, Pine Tree sought a declaratory judgment that it took title to Camp Bomazeen free of any

---

[1] The law is well established that "the community has an interest in the enforcement of charitable trusts and the Attorney General represents the community in seeing that the trusts are properly performed." *Fitzgerald v. Baxter State Park Auth.*, 385 A.2d 189, 194 (Me. 1978) (alteration and quotation marks omitted). "In respect to charitable trusts, the Attorney General's duty to protect the community interest in their enforcement is not only derived from the common law, but is imposed by legislative mandate*." In re Estate of Thompson*, 414 A.2d 881, 890 (Me. 1980); *see* 5 M.R.S. § 194 (2024); *see also City of Augusta v. Att'y Gen.,* 2008 ME 51, ¶ 2 n.1, 943 A.2d 582 ("[T]he Attorney General has the statutory and common law duty to protect the community interest in proper use of charitable trust proceeds, enforcement of the terms of charitable trusts, and amendment of charitable trusts to assure proper consideration of the charitable purposes of the trust as circumstances change.").

restrictions and that it could use the sale proceeds in any way. In Count 2, Pine Tree alternatively sought a declaratory judgment that it "took title to Camp Bomazeen subject only to the restriction that it be for the" trust's general purpose, the "'use and benefit of members of the Boy Scouts of America,'" and that its proposed use of the sale proceeds fits that restriction.

[¶9] On April 7, 2021, the Old Timers moved to intervene. The court granted the motion to intervene in an order entered on May 19, 2021. On May 28, 2021, the Old Timers filed a complaint asserting two counts against Pine Tree. In Count 1, the Old Timers sought to quiet title and, inter alia, for the court to exercise its cy pres powers and enter a declaratory judgment that title did not vest in Pine Tree, order Pine Tree to cease efforts to sell Camp Bomazeen, enjoin dissolution of the trust, and appoint successor trustees. In Count 2, the Old Timers alleged that Pine Tree breached the charitable trust terms and its fiduciary duties by failing to appoint successor trustees and by attempting to sell Camp Bomazeen; the Old Timers sought relief similar to their request in Count 1. On June 17, 2021, Pine Tree filed its answer to the Old Timers' complaint and asserted the same counterclaims it had brought against the Attorney General.

[¶10] On April 22, 2022, Pine Tree and the Old Timers each filed a motion for summary judgment, and they filed a stipulated statement of material facts

signed by all parties. After holding a hearing on the motions for summary judgment on June 13, 2022, the court entered judgment on August 3, 2022, in favor of the Attorney General against Pine Tree, and it denied Pine Tree's and the Old Timers' motions for summary judgment.

[¶11] The court concluded that there was no dispute of material fact and determined, after analyzing the Averill Deed, that Pine Tree had "succeeded only to legal title of the property and not to equitable title." The court also concluded that Pine Tree was permitted to sell Camp Bomazeen but that its proposed use of the proceeds was inconsistent with the trust's purposes, which require the proceeds to be used for camping, especially for scouts in central Maine. The court "decline[d] to find that [Pine Tree] has lost its ability to hold legal title to or sell the trust property by failing to appoint successor trustees."

[¶12] On August 24, 2022, Pine Tree filed a notice of appeal and a motion for entry of final judgment. The motion asserted that the court's order did not expressly resolve all claims, and it requested clarification that the court meant to enter final judgment against the Old Timers on their claims against Pine Tree. The Old Timers filed an opposition, contending that the court should permit the remaining unresolved claims, including Count 2 of their complaint, to proceed to trial.

[¶13] On October 18, 2022, the court entered a judgment granting Pine Tree's motion for entry of final judgment. In the judgment, the court stated that its prior order was not a final judgment and amended its prior order and entered a summary judgment against Pine Tree on its counterclaims and against the Old Timers on their claims against Pine Tree. Pine Tree and the Old Timers timely appealed. *See* M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶14] We begin by addressing whether title vested in Pine Tree and, if so, whether the title that vested was full title or merely legal title. We then address whether the proceeds from the sale of Camp Bomazeen would be subject to the charitable use restrictions imposed by the Averill Deed. Finally, we turn to the Old Timers' contention that the matter should be remanded for application of the cy pres doctrine.

### A. Vesting of Title

[¶15] The material facts are undisputed, and the parties agree that the Averill Deed created a charitable trust. The central question is whether, under the terms of the charitable trust, Pine Tree obtained full title to Camp Bomazeen or instead obtained only legal title, with equitable title remaining with other beneficiaries.

[¶16]  We review de novo the entry of summary judgment.  *Connary v. Shea*, 2021 ME 44, ¶ 11, 259 A.3d 118.  When there is no genuine issue of material fact, "we review de novo the trial court's interpretation and application of the relevant . . . legal concepts."  *Dorsey v. N. Light Health*, 2022 ME 62, ¶ 10, 288 A.3d 386 (quotation marks omitted).  The existence of cross-motions for summary judgment does not change our standard of review. *Id.*

[¶17]  The interpretation of a deed creating a trust is a legal question when there is no ambiguity in the document.  *See First Nat'l Bank of Bar Harbor v. Anthony*, 557 A.2d 957, 960 (Me. 1989); *Sleeper v. Loring*, 2013 ME 112, ¶ 10, 83 A.3d 769.  In interpreting a trust instrument, "[t]he settlor's intent is gathered from the whole instrument, and a court must interpret it within the four corners of the document," but it may use the context provided by the entire instrument "to interpret specific sections."  *Connary*, 2021 ME 44, ¶ 13, 259 A.3d 118 (quotation marks omitted); *see also In re Ross Fam. Trs.*, 2002 ME 89, ¶ 5, 797 A.2d 1268 (interpreting the plain language of the document "reading it as a whole to give effect to [the] intent of the settlor").  In construing the trust document, we consider that the settlor's "intention must be related to the time

the [trust] was executed."[2] *Connary*, 2021 ME 44, ¶ 13, 259 A.3d 118 (quotation marks omitted).

[¶18]  A charitable trust "is 'a fiduciary relationship with respect to property arising as a result of a manifestation of an intention to create it, and subjecting the person by whom the property is held to equitable duties to deal with the property for a charitable purpose.'"  *Att'y Gen. v. First United Baptist Church of Lee*, 601 A.2d 96, 98 (Me. 1992) (quoting Restatement (Second) of Trusts § 348 (Am. L. Inst. 1959)).

[¶19]  "In a trust there is a separation of interests in the subject matter of the trust, the beneficiary having an equitable interest and the trustee having an interest which is normally a legal interest."  Restatement of Trusts § 2 cmt. f (Am. L. Inst. 1935).  A charitable trust—like any other trust—can have trustees who hold legal title while equitable title is held by named beneficiaries.  *See, e.g.*, *City of Augusta v. Att'y Gen.*, 2008 ME 51, ¶ 4, 943 A.2d 582 (involving land held by trustees for the use and benefit of an academic institution); *First United Baptist Church*, 601 A.2d at 98 (involving property held by a church as trustee for the benefit of the church and the community at large).

---

[2] For this reason, we rely primarily on the Restatement of Trusts (Am. L. Inst. 1935) in construing the Averill Deed.  Because the fundamental principles of trust law have not changed in any significant way since the execution of the deed, however, we cite more recently published Restatements to some extent, and we cite post-1944 cases that summarize and apply well-settled legal principles.

12

[¶20] For the purposes of the dispute at issue here, Averill—the settlor—conveyed the property comprising the camp to the named trustees and their successors and assigns in trust "for the use and benefit of members of the Boy Scouts of America," with title vesting in "the Council of the Boy Scouts of America having jurisdiction over" the camp premises "[s]hould Trustees fail to be appointed or the Trust fail for any reason." Like any other trust, the charitable trust established by the Averill Deed comprises separate legal and beneficial interests.

[¶21] There is no dispute that the contingency that gives rise to title vesting in Pine Tree has come to pass: trustees have unquestionably "fail[ed] to be appointed." The primary issue is what kind of "title" vested with Pine Tree upon the realization of that contingency. *See* Restatement of Trusts § 2 cmt. d (Am. L. Inst. 1935) ("[T]he term 'title,' unlike 'ownership,' is a colorless word; to say without more that a person has title to certain property does not indicate whether he holds such property for his own benefit or as trustee.").

[¶22] Mindful of these distinctions, we consider the whole trust instrument to determine the meaning of the term "title" in the seventh article and to give effect to the settlor's intent. *See In re Ross Fam. Trs.*, 2002 ME 89, ¶ 5, 797 A.2d 1268. Reading the terms of the seventh article of the Averill Deed in conjunction with the rest of the trust instrument, we conclude that legal title

vested in Pine Tree; absent further action on its part, Pine Tree has become a "successor trustee";[3] and Pine Tree continues to be subject to the trust's restrictions.

[¶23]  In the sixth article, the settlor charged Pine Tree, as the Council of the Boy Scouts of America with jurisdiction in Belgrade, Maine, with appointing successor trustees.  In April 2008, Pine Tree determined that all previous trustees had resigned, had died, or were no longer acting as trustees, and no replacement trustees had been appointed by anyone.  The settlor, however, contemplated this exact scenario and included provisions addressing what would occur if those circumstances arose.  The seventh article of the Averill Deed provides, "Should Trustees fail to be appointed or the Trust fail for any reason, then and in such an event title to the said property herein conveyed . . . shall vest" in Pine Tree.  In addition, the seventh article gave Pine Tree the option to appoint a new Board of Trustees, should it choose to do so, under such terms and conditions as Pine Tree may see fit,

---

[3] "The powers conferred upon a trustee can properly be exercised by his successors, unless it is otherwise provided by the terms of the trust."  Restatement (Second) of Trusts § 196 (Am. L. Inst. 1959).  "The terms of the trust may in specific words . . .  authorize . . . the exercise by successor trustees of some of the powers conferred upon the original trustee."  *Id.* § 196 cmt. a.  "Powers which are essential to the trust or powers which relate to the effective administration of the trust can ordinarily be exercised by successor trustees."  *Id.* § 196 cmt. b.

*but only as would be "consistent with the general purpose to this Trust."* (Emphasis added.)

[¶24]  Pine Tree argues that it holds title to Camp Bomazeen free of any restrictions.  That contention turns on the legal effect of "title" "vesting" in Pine Tree upon its failure to appoint trustees under the seventh article of the Averill Deed.  Although Pine Tree is correct that title vested in it due to the failure to appoint trustees, it is wrong that it succeeded to full, undivided legal and equitable title to Camp Bomazeen.  As noted above, trusts are characterized by a separation of legal and beneficial interests.  *See* Restatement of Trusts § 2 cmt. f.  At most, Pine Tree succeeded only to the legal interests that were previously held by the trustees, who no longer existed when Pine Tree asserted an interest in Camp Bomazeen in 2007 and 2008.  Significantly, charitable trusts are favorites of the law and are to be liberally construed.  *Grigson v. Harding*, 154 Me. 146, 150, 144 A.2d 870, 873 (1958); *Bates v. Schillinger*, 128 Me. 14, 17-18, 145 A. 395, 397 (1929).  "The policy of the law has long been liberal in sustaining trusts designed to carry into effect any public or charitable purpose." *Miller v. Inhabitants of Friendship*, 265 A.2d 608, 610 (Me. 1970) (emphasis and quotation marks omitted).

[¶25] Several factors support the conclusion that, despite the absence of trustees, the settlor of the Averill trust did not intend for the trust to terminate and instead intended that it continue for the benefit of the original trust beneficiaries. First, the plain language of the seventh article—"title" shall "vest" in Pine Tree if trustees fail to be appointed—is consistent with a continuation of the trust with Pine Tree standing in the shoes of the original trustees. The term "title" refers to an interest held by a person, whether that interest is held for the person's own benefit or for the benefit of another. Restatement of Trusts § 2 cmt. d. Without more, the term "title" does not indicate whether the title holder holds the property beneficially or as a trustee. *Id*. The language of the seventh article regarding "title" vesting in Pine Tree thus does not indicate that equitable title would vest in Pine Tree or that the trust would terminate. Because, as noted above, charitable trusts are liberally construed under Maine law, the "title" that Pine Tree took when it failed to appoint successor trustees must be interpreted as legal title only. *Miller*, 265 A.2d at 610, *Bates*, 128 Me. at 17-18, 145 A. at 397.

[¶26] Second, in the seventh article, the settlor gave Pine Tree the discretion to appoint a replacement Board of Trustees "under such conditions and terms as they may see fit," *so long as those conditions and terms are*

"*consistent with the general purpose to this Trust.*" (Emphasis added.) The logical reading of that language is that Pine Tree was given the discretion to serve as a trustee of the trust or to delegate that function to a new Board of Trustees. If Pine Tree opts to appoint new trustees, it may only do so subject to the original purposes of the trust, with any additional conditions and terms it may choose that are consistent with the trust's general purposes. Had Pine Tree succeeded to full, unrestricted legal and beneficial title (and the trust had thus terminated), the Averill Deed's stated restrictions on the future trustees would be a complete nullity. Under a scenario where full (legal and beneficial) title vested in Pine Tree, it could appoint replacement trustees subject to any terms that it saw fit, without having to be "consistent with the general purpose to this Trust." The Averill Deed should not be interpreted in a manner that renders critical terms meaningless.[4] *See Miller*, 265 A.2d at 610.

[¶27] Pine Tree was the Maine public benefit corporation and public charity in the Kennebec Valley District that carried out the mission of the Boy

---

[4] In fact, when it recorded the Notice of Compliance, Pine Tree itself recognized that it would be succeeding only to legal and not equitable title. When Pine Tree approved the filing of the Notice of Compliance, its executive board minutes dated October 18, 2007, state, "Voted: That the land comprising Camp Bomazeen which is in the names of the Trustees be transferred *subject to the trust conditions* to Pine Tree Council, Inc." (Emphasis added.) The Notice of Compliance reflects that legal title thereby vests in Pine Tree, but it is silent on the continuing existence or termination of the trust. The Notice of Compliance is thus completely consistent with the conclusion that the Averill trust continued, with Pine Tree stepping into the shoes of the original trustees.

Scouts of America in that district. Pine Tree thus was integral to seeing that scouts and its members were benefitted in accordance with the Averill Deed's expressed purposes and was tasked by the settlor with multiple oversight responsibilities in the administration of the trust for those beneficiaries. Arguably the most significant of those duties was to replace trustees to ensure the continuation of the trust. Consequently, it would defy logic and nullify the law favoring charitable trusts to conclude that the settlor intended to "reward" Pine Tree with full title to Camp Bomazeen upon its absolute failure to follow his directions. *See Miller*, 265 A.2d at 610. Interpreting the seventh article as continuing the trust with Pine Tree or its designee as trustee is without question more consistent with the settlor's intention to provide specified benefits for the scouts and its members and to delegate certain related responsibilities to Pine Tree. Therefore, the charitable trust at issue here did not terminate.[5]

---

[5] Pine Tree argues that the trust has failed because the "forever in trust" language is subject to the disposition of the property described in the seventh article, under which title vests in Pine Tree should trustees fail to be appointed or the trust fail. According to Pine Tree, because full, unrestricted title to Camp Bomazeen has vested in Pine Tree, the property is no longer in trust, so the "forever in trust" language could not control. Pine Tree's contention is unpersuasive, since, as described above, the trust did not terminate when Pine Tree failed to appoint successor trustees. Instead, at most, title vested in Pine Tree subject to the original trust terms. The "forever in trust" language can and should be read consistently with the seventh article. *Sleeper v. Loring*, 2013 ME 112, ¶ 16, 83 A.3d 769 (interpreting deed to allow all parts to coexist without raising questions about its meaning).

**B. Trust Conditions Restricting the Use of Proceeds from a Sale of Camp Bomazeen**

[¶28] Like the original trustees into whose shoes it stepped, Pine Tree may sell Camp Bomazeen subject to certain conditions. Those conditions include the fourth article's requirement that "the consideration derived by the Trustees from such a transaction shall be used for the purposes and under the conditions set forth in this Trust Indenture."

[¶29] This fourth article of the Averill Deed expressly reflects that Averill contemplated that the original trust purposes could be honored whether the trust corpus consists of the original real property or cash realized from the sale of the real property. A trust's purposes may be achieved by applying trust conditions to alternative property, including proceeds from the sale of the original real property. *See City of Augusta*, 2008 ME 51, ¶ 33, 943 A.2d 582. For instance, in 2008, we affirmed the approval of a modification of a trust created by an 1815 deed from Daniel Cony to establish a high school in Augusta. *Id.* ¶¶ 4, 33. Citing the doctrine that allows equitable deviation in changed circumstances, we affirmed the judgment approving the sale of original real

property and the transfer of the trust conditions to the sale proceeds. *Id.* ¶¶ 16, 33.[6]

[¶30]  According to the terms of the of the Averill Deed, whether the corpus of the trust takes the form of real property or cash, and whether it is held by the original or successor trustees, it must be used for the same original charitable purposes.  Thus, the proceeds of any sale of Camp Bomazeen are governed by the same trust restrictions as the original Camp Bomazeen property.

## C.    Cy Pres and the Appointment of Trustees

[¶31]  Although the Old Timers moved for summary judgment on their complaint, asserting that there were no genuine issues of material fact, they now ask that this matter be remanded so that the trial court may "exercise its equitable powers and apply" the "doctrine of *cy pres* prohibiting 'failures' of charitable trusts, to order the appointment of successor trustees" and to carry out the purposes of the Averill Deed, particularly considering that Pine Tree does not want to preserve the trust's purposes or serve as trustee.

---

[6] Unlike the Averill Deed, the Cony deed did not include a provision that expressly permitted the sale of the real property and transfer of the trust terms to an alternative asset. *City of Augusta*, 2008 ME 51, ¶¶ 4, 33, 943 A.2d 582.  The Cony deed's trust terms were, however, ultimately transferred to the $1.5 million in proceeds from the sale of the original property. *City of Augusta v. Rowe*, No. AUGSC-RE-2005-27, 2008 WL 7541736, at *2 (Me. Super. Ct. Dec. 23, 2008).

[¶32]  Under the doctrine of cy pres, "if a particular charitable purpose of a trust becomes unlawful, impracticable, impossible to achieve or wasteful . . . [t]he court may apply cy pres to modify or terminate the trust by directing that the trust property be applied or distributed, in whole or in part, in a manner consistent with the settlor's charitable purposes."  18-B M.R.S. § 413(1) (2024); *see In re Estate of Thompson*, 414 A.2d 881, 885 (Me. 1980).  There are three prerequisites to the application of this doctrine: "[f]irst, the court must find that the gift creates a valid charitable trust; second, it must be established that it is impossible or impractical to carry out the specific purpose of the trust; and thirdly, the court must determine whether, in creating the charitable trust, the testator or settlor had a general charitable intent."  *In re Estate of Thompson*, 414 A.2d at 886 (footnote omitted); *Freme v. Maher*, 480 A.2d 783, 786 (Me. 1984) (explaining that the doctrine is often used when a charitable trust is "established in favor of a corporation or institution that ceases to exist").  We review de novo whether the facts presented on summary judgment preclude the application of the cy pres doctrine as a matter of law.  *See Freme*, 480 A.2d at 787; 18-B M.R.S. § 413(1).

[¶33]  We conclude that cy pres is inapplicable because on the asserted facts, there is no support for the second condition required for applying cy pres. The Averill Deed provided a specific disposition for the failure to appoint

trustees, and that disposition has occurred. It is therefore neither impossible nor impractical to achieve the purpose of the trust. *See In re Estate of Thompson*, 414 A.2d at 886; *see also Mfrs. Nat'l Bank v. Woodward*, 140 Me. 117, 120, 34 A.2d 471, 472 (1943) ("In the absence of allegation and proof that . . . the gift of the testator [has] fail[ed], there is no basis on which the court can invoke the rule of *cy pres*."); *Guilford Tr. Co. v. LaFleur*, 148 Me. 162, 168, 91 A.2d 17, 19-20 (1952) (declining to reach the issue of cy pres when changed circumstances since the time of charitable gift did not make it impossible or impractical to carry out the purpose of the trust). Presciently, nearly eighty years ago, George G. Averill anticipated the possibility that Pine Tree would not appoint trustees, and the Averill Deed provided for a specific disposition—the vesting of legal title in Pine Tree—so that the trust would continue to benefit scouts.[7]

The entry is:

Judgment affirmed.

---

[7] Because the Averill Deed contemplates that Pine Tree could fail to appoint individuals as trustees and assume the role of trustee itself, Pine Tree has not breached a fiduciary duty in that respect. As to the other relief that the Old Timers sought for breach of fiduciary duty, the Superior Court's judgment provides the relief that the Old Timers sought, declaring that the corpus of the trust must be used for the camping purposes described in the trust instrument. Accordingly, any further issue with respect to the claim for breach of fiduciary duty is moot. *See Me. Civ. Liberties Union v. City of S. Portland*, 1999 ME 121, ¶ 8, 734 A.2d 191 ("A dispute loses its controversial vitality when a decision by this court would not provide an appellant any real or effective relief." (quotation marks omitted)).

22

Eric J. Wycoff, Esq., and Kyle M. Noonan, Esq. (orally), Pierce Atwood LLP, Portland, for appellants Pine Tree Council, Inc., Boy Scouts of America

Russell B. Pierce, Jr., Esq. (orally), and Joseph M. Mavodones, Esq., Norman, Hanson & DeTroy, LLC, Portland, for cross-appellants Bomazeen Old Timers, Bruce F. Rueger, and Scott F. Adams

Aaron M. Frey, Attorney General, and Christina M. Moylan, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee Office of the Attorney General

Kennebec County Superior Court docket number CV-2021-39